UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————————————X

MRS. JENEDRA BINYARD,

                Plaintiff,

     -against-                                  **MEMORANDUM**
                                              **AND ORDER**
THE ADMINISTRATION OF CHILDREN        13-CV-1152 (WFK)(RML)
SERVICE; MRS. BERNADETTE JEAN
LOUIS; THE BROOKLYN CHILD ABUSE
SQUAD; DET. JOHN DOE, JANE DOE,

                Defendants.
————————————————————————————X
**KUNTZ, II, United States District Judge**:

      On February 28, 2013, plaintiff filed this *pro se* action alleging violations of her

constitutional rights during the course of a child abuse investigation on April 27, 2012 by the

Administration for Children's Services ("ACS") and the Brooklyn Child Abuse Squad. Plaintiff

does not state what remedy she seeks. Plaintiff's request to proceed *in forma pauperis* pursuant

to 28 U.S.C. § 1915 is granted. For the reasons discussed below, the complaint is dismissed as to

ACS and plaintiff is granted thirty (30) days leave to file an amended complaint.

### Background

      Plaintiff's complaint is brief. It contains six paragraphs, two of which identify her as the

plaintiff and provide her address.   The remaining four paragraphs state in their entirety:

> 3. The above mentioned [in the caption] defendants conspired together at the
> Administration of Children Service located on Schemerhorn St. Bklyn.
> 4. The above violation occurred on April 27, 2012 at approximately 2:00 p.m.in
> the afternoon. Mrs. Bernadette Jean Louis told me to come to her office to talk
> with her. I complied.
> 5. We spoke for a while, then I was locked in a room for 5 to 6 hours. There
> where [sic] several detectives that entered the room and started asking questions.

I felt very tired, harassed and disrespected. They also forced me to take a urine sample as well.

6. Mrs. Bernadette Jean Louis conjured along with 2 detectives in putting me in a compromising situation by locking me in a room for six hours as though I had committed a crime. Someone shouldn't be treated as an animal in which the way I was treated to create an A.C.S. case against me.

Complaint at 1-2. Plaintiff does not state what relief she seeks.

## Standard of Review

Uner 28 U.S.C. § 1915 (e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." A complaint fails to state a claim on which relief can be granted if, taking all allegations contained in the complaint to be true, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004).

However, a court must construe a *pro se* litigant's pleadings liberally, *see Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010), especially when those pleadings allege civil rights violations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008). A *pro se* complaint should not be dismissed without granting a *pro se* plaintiff leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (*per curiam*).

Although courts must read *pro se* complaints with "special solicitude" and interpret them to raise the "strongest arguments that they suggest," *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-76 (2d Cir. 2006) (internal quotation marks omitted), a complaint must plead

enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausability when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 55 U.S. 662, 678 (2009) (citation omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## Discussion

Plaintiff brings this action alleging a violation of her constitutional rights. The Court construes the action as a claim for damages brought pursuant to 42 U.S.C. § 1983. In order to maintain a claim under 42 U.S.C. §1983, plaintiff must allege that (1) "the conduct complained of must have been committed by a person acting under color of state law," and (2) "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

### A. Claim Against ACS Dismissed

ACS is an agency of the City of New York and cannot be sued independently for damages under 42 U.S.C. § 1983. *Jenkins v. City of New York*, No. 06CV0182, 2007 WL 415171, at *11 n. 19 (2d Cir. Feb. 6, 2007) (citing *Wray v. City of New York*, 340 F. Supp. 2d 291, 3030 (E.D.N.Y. 2004) (Weinstein, J.) (quoting N.Y.C. Charter Ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except were otherwise provided by

3

law.")); *see also, e.g., Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) (Marrero, J.). Therefore, the complaint against ACS is dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

To the extent plaintiff may be seeking to raise a claim against the City of New York, the complaint, as currently stated, fails to do so. In order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal defendant such as the City of New York, a plaintiff must show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978)). Proof of a single incident of unconstitutional activity is not sufficient to impose liability on a municipality unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Here, plaintiff does not allege, and nothing in her complaint suggests, that any of the allegedly wrongful acts were attributable to a municipal policy or custom. Accordingly, there does not appear to be any basis for suing the City of New York. 28 U.S.C. §§ 1915(e)(2)(B)(ii).

**B. Constitutional Violation**

Construing the complaint liberally, plaintiff suggests that she was seized by defendants for six hours by being "locked" in a room at a Brooklyn office of ACS, searched by defendants because she was "forced" to submit a urine sample and that defendants "conspired" in an unspecified way. It appears, although it is not stated in the complaint, that she was the subject of an ACS child abuse investigation. More information is needed from plaintiff in order to

determine if she has alleged a constitutional violation, plead enough facts to state a claim to relief that is plausible on its face, and to comply with Fed. R. Civ. P 8.

If plaintiff was the subject of a child abuse investigation, the analysis of whether there has been any constitutional violation will be framed by the state statute governing the same. Under New York's Child Protective Services Act, ACS is responsible for investigating complaints of suspected child abuse, neglect, and maltreatment. N.Y. Comp.Codes, R. and Regs. tit. 18, § 432.2(b)(1). The state statute mandates that "[t]he child protective service must commence or cause the appropriate society for the prevention of cruelty to children to commence, within 24 hours after receiving a child abuse and/or maltreatment report, an appropriate investigation of each report of suspected child abuse and/or maltreatment. Within 24 hours of receiving a child abuse and/or maltreatment report, the child protective service, or the appropriate society for the prevention of cruelty to children must conduct a face-to-face contact or a telephone contact with the subjects and/or other persons named in the report or other persons in a position to provide information about whether the child may be in immediate danger of serious harm." *Id.* at § 432(b)(3).

Although parents enjoy a constitutionally protected interest in their family integrity, this interest is counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves. The Court of Appeals for the Second Circuit "has adopted a standard governing case workers which reflects the recognized need for unusual deference in the abuse investigation context." *Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999). "In applying a reasonableness standard in the abuse context, courts must be especially sensitive to the

pressurized circumstances routinely confronting case workers, circumstances in which decisions between 'difficult alternatives' often need to be made on the basis of limited or conflicting information. *Id.* at 105 (citing *van Emrik v. Chemung County Dep't of Social Services*, 911 F.2d 863, 866 (2d Cir. 1990)). The compelling governmental interest in the protection of minor children is not so compelling, however, as to derogate a parent's constitutional rights completely. Case workers cannot be free to substantiate a claim of abuse, for instance, by ignoring overwhelming exculpatory information or by manufacturing false evidence. *Cf. Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir.1997) (finding triable issue on whether officers were entitled to immunity from claim that they violated suspect's "clearly established Constitutional rights by conspiring to fabricate and forward to prosecutors a known false confession"). "The difficulty of balancing the weighty interests apparent in the abuse context, however, has prompted courts to impose few concrete restrictions on case workers, in exercising their discretion, short of these obvious extremes" *Wilkinson*, 182 F.3d at 104.

Also relevant to whether plaintiff has stated a claim for a violation of her constitutional rights is what constitutes a seizure. Every encounter between a private citizen and government officials does not constitute a seizure, and the relevant assessment is of the "overall coercive effect of police [or state official] conduct." *Dejesus v. Vill. of Pelham Manor*, 282 F.Supp.2d 162, 168 (S.D.N.Y. 2003) (Marrero, J.). "A 'seizure,' triggering the Fourth Amendment's protections, occurs only when government actors have, 'by means of physical force or show of authority, ... in some way restrained the liberty of a citizen.'" *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989) (second alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)). Further, a seizure occurs where, "in view of all of the circumstances surrounding the

incident, a reasonable person would have believed that he was not free to leave." *Kia v. Mcintyre*, 235 F.3d 749 (2d Cir. 2000) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554(1980)). "Factors that have been found relevant in determining whether a seizure has occurred include: 'threatening presence of several officers; the display of a weapon; physical touching of the person [by] the officer; language or tone indicating that compliance with [the] officer was compulsory; prolonged retention of a person's personal effects, such as airplane tickets or identification; and a request by an officer to accompany him to the police station or a police room.' " *Dejesus*, 282 F.Supp.2d at 169 (quoting *Terry v. Ohio*, 392 U.S. at 16).

**C. Leave to Amend**

In light of plaintiff's *pro se* status, *Cruz v. Gomez*, 202 F.3d 593 (2d Cir. 2000), plaintiff is afforded thirty days to amend her complaint in order to set forth a claim against proper defendant(s) under section 1983. *See* Fed R. Civ. P. 15(a); *see e.g., Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the [pro se] complaint gives any indication that a valid claim might be stated.") (quoting *Gomez v. USAA Federal Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

In the instant complaint, plaintiff names the defendants in the caption but does not allege enough facts to state a claim to relief that is plausible on its face or connect the facts to the defendants so that the defendants will have notice of the claim against them as required by Federal Rule of Civil Procedure 8. If plaintiff cannot identify a defendant by names, he may identify each individual as "John or Jane Doe #1" *et cetera,* and provide a physical description and any other identifying information such as the precinct or facility with which she or he works.

Plaintiff must also provide facts sufficient to allow each defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly v. Bell*, 425 F.3d 99, 106 (2d Cir. 2005) (defining "fair notice" as " 'that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial.' ") (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)); *Ricciuti v. New York City Transit Auth.*, 941 F.2d at 123 (2d Cir. 1991). While pleading these facts, plaintiff should specify what each individual defendant did or failed to do. Plaintiff is reminded that it is important to link the defendants named in the caption to the events described in the body of the amended complaint.

## Conclusion

Accordingly, plaintiff's complaint against defendants ACS is dismissed. 28 U.S.C. §§ 1915(e)(2)(B)(ii). No summons shall issue as to this defendant.

Plaintiff shall have thirty (30) days to file an amended complaint setting forth her claims against each defendant named in the amended complaint. Should plaintiff decide to file an amended complaint, it must be submitted within thirty days of this Order, be captioned "Amended Complaint," and bear the same docket number as this Order. Plaintiff is advised that the amended complaint will completely replace the original complaint. All further proceedings will be stayed for thirty days or until plaintiff has complied with this Order. If plaintiff fails to comply with this Order within the time allowed, the complaint shall be dismissed and judgment shall enter. If submitted, the amended complaint will be reviewed for compliance with this Order and for sufficiency under 28 U.S.C. § 1915(e)(2)(B).

The Court certifies pursuant to 28 U.S.C. §1915(a)(3) that any appeal from this order

would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of

an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.                                        s/WFK

William F. Kuntz, II
United States District Judge

Dated:  Brooklyn, New York
            March 7, 2013